IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TROUTMAN INVESTMENT COMPANY, | ) | |
| | ) | |
| Debtor. | ) | Case No. 07-6106-HO |
| | ) | |
| | ) | ORDER |
| _____ | ) | |
| | ) | |
| RON TROUTMAN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF UNSECURED | ) | |
| CREDITORS OF TROUTMAN INVESTMENT | ) | |
| COMPANY, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |
| _____ | ) | |

Ron Troutman appeals from a judgment in an adversary
proceeding in bankruptcy court for appellees Official Committee of

1 - ORDER

unsecured Creditors of Troutman Investment Company (Creditor's Committee) to recover, as receivables, amounts allegedly owed to the debtor, Troutman Investment Company.  The Bankruptcy court found that appellant owed debtor $150,000 for a loan incurred to pay appellant's ex-wife for stock in debtor awarded in divorce proceedings.  The bankruptcy court further found that appellant owed debtor $97,816.04 for an outstanding balance on a house account.  The court determined that the amounts owing were to be paid to the creditor's committee.  Appellant seeks a reversal of the bankruptcy court's determinations and a finding that he owes nothing to the creditor's committee or, in the alternative, a remand for further findings on the house account and the $150,000 loan.

## STANDARD

The bankruptcy court's findings of fact shall not be set aside unless clearly erroneous.  Fed. R. Bankr. P. § 8013.  Issues of law are reviewed *de novo*.  U.S. v. Horowitz, 756 F.2d 1400, 1403 (9th Cir. 1985).  Mixed questions of law and fact are reviewed de novo. Boone v. United States, 944 F.2d 1489, 1492 (9th Cir. 1991). Mixed questions arise when the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule.  Pullman-Standard v. Swint, 456 U.S. 273, 289 n. 19 (1982); Moss v. Comm'r., 831 F.2d 833, 838 n. 9 (9th Cir. 1987).

2 - ORDER

## FACTUAL BACKGROUND

Debtor filed for Chapter 11 protection on December 13, 2002. On December 12, 2003, Appellee Creditor's Committee filed an adversary proceeding to recover debts owed. The Creditor's Committee alleged that Ron Troutman received $247,816.04, consisting of $97,000 charged by Ron Troutman for personal purchases (the house account) and $150,000 advanced to Ron Troutman in 1998 and used for personal needs (the loan to pay Ron Troutman's ex-wife). In the pretrial order, the Creditor's Committee claimed the $150,000 loan was due and owing as a receivable by Ron Troutman as a result of the repayment by the debtor of the loan from South Umpqua Bank to Dallas Troutman in 1997.

The debtor was a chain of retail department stores founded in 1955 by Dallas Troutman in North Bend, Oregon. By 2002, the Debtor had grown to 34 stores served by a 200,000 sq. ft. distribution center/corporate headquarters building in Eugene, Oregon. Throughout its history, the debtor remained a privately held company owned primarily by Dallas Troutman and members of the Troutman family. The debtor's senior management was controlled by Dallas Troutman and his family members, including the Appellant, Ron Troutman.

Ron Troutman began working for the debtor as a full-time employee in August 1963, and remained employed by the Debtor until 2002. Ron Troutman ultimately held the position of vice president

3 - ORDER

of merchandising and advertising and served as a member of the debtor's board of directors.

The house account was established in 1963 allowing Ron Troutman to charge to the debtor the cost of items that the debtor sold in stores as well as purchases from third parties. Monthly invoices were delivered to Ron Troutman's mail box at the debtor's offices showing the balance owed on the house account. The house account was informal and lacked written terms. In 1997, divorce proceedings involving Ron Troutman demonstrated that as of 1997 the amount owing on the house account was $84,450.

During the course of the divorce proceedings Ron Troutman purchased his wife's share in the debtor's stock (awarded by the divorce court) by borrowing $150,000 from Dallas Troutman.[1] Dallas Troutman obtained the money by taking out a loan from South Umpqua bank. In June of 1998, Dallas Troutman caused the debtor to issue $150,000 to South Umpqua bank to repay the loan. Ron Troutman would satisfy the debt owed the debtor by selling back the stock he purchased from his ex-wife. The stock transfer did not occur.

## DISCUSSION

A.    The House Account

Ron Troutman contends that the bankruptcy court erred in

---

[1]Dallas Troutman and the debtor had a policy that no ex-wife could have any shares in the debtor.

4 - ORDER

finding an account stated or open account because: (1) the bankruptcy court erred in entertaining open account and account stated theories of recovery as such theories had not been properly plead; (2) the Creditor's Committee did not establish an agreement to pay a sum certain to establish an account stated; (3) the Creditor's Committee did not provide sufficient proof to support an open account; and (4) the bankruptcy court erred in applying judicial estoppel as proof of a portion of the house account balance.

1.  The Creditor's Committee Did Sufficiently Plead An Account Stated and Open Account

Under the federal rules, a complaint need only contain a short and plain statement of the claim showing an entitlement to relief. Fed. R. Civ. P. 8(a). Although the second amended complaint titles the claims for relief as "Money Lent" and "Turnover," the allegations contained within those claims were sufficient provide notice of what was being sought and why. The second amended complaint alleged that Ron Troutman had not paid outstanding balances owed and derived from amounts owing on the house account. This is fair notice of the claim and the grounds. See Self Directed Replacement Corp. v. Control Data Co., 908 F.2d 462, 466 (9th Cir. 1990) ("[I]t is not necessary that plaintiff state sufficient facts to constitute a cause of action, plaintiff must at

least set forth enough details so as to provide defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery.")

2.   Account Stated

An account stated is an agreement between parties that a certain amount is owing and will be paid. Sunshine Dairy v. Jolly Joan, 234 Or. 84, 85 (1963).

The Bankruptcy court found that Ron Troutman himself claimed, in divorce proceedings, that the house account debt was $84,450 in 1997. The court determined that the Lane County Circuit Court relied upon Ron Troutman's representation in its division of property findings and thus determined that Ron Troutman may not now take another position and contend that the $84,450 figure was incorrect. The court also found that Ron Troutman had received at least some statements showing the current balance as $97,816.04 and that he did not object to them. A statement of account received without objection becomes an account stated binding upon the parties. See id. at 639.

The evidence established that the accounting manager viewed the account as one required to be payed by Ron Troutman and that Ron Troutman indeed made payments. Although Ron Troutman failed to repay the entire balance, such does not rebut the presumption that he did not object to the correctness listed on the statements. The

6 - ORDER

manner of payment, such as through deductions from paychecks or bonuses, does not demonstrate that the amount declared in the statements was incorrect.  This is especially true in light of Ron Troutman's own reliance on the amount due in his 1997 divorce proceedings.

The business records of the debtor along with the fact that Ron Troutman did receive statements showing the balance due tips the scale in favor of the determination made by the bankruptcy court.  That determination is the same conclusion reached by this court.


3.   Open Account

In addition to properly finding an account stated, the Bankruptcy court correctly determined that the evidence established an open account.  The bankruptcy court did not err in finding a valid contract existed between the debtor and Ron Troutman regarding the house account, there was an amount outstanding of $97,816.04, and the amount was correct or otherwise reasonable. See Northwest Country Place, Inc. v. NCS Healthcare of Oregon, Inc., 201 Or. App. 448, 460 (2005).  The business records of the debtor along with the fact that Ron Troutman did receive statements showing the balance due also tips the scale in favor of the determination made by the bankruptcy court.

Ron Troutman's assertions of a failure to apply the

presumptions found in ORS § 10.095(8) and ORS § 40.135(1) does not demonstrate the bankruptcy court erred.   The Oregon Rules of Evidence do not apply to this case.  <u>See</u> Fed. R. Bank P. 9017 and Fed. R. Ev. 1101(b).  Fed. R. Ev. 302 does not work to apply the state presumptions either.  <u>See</u> Fed. R. Ev. 302 Advisory Committee Notes (rule does not apply to state law when the presumption operates on a lesser aspect of the case such as tactical presumptions).  ORS § 10.095(8) deals with allowing a jury to view evidence with distrust if stronger evidence existed but was not presented.  With respect to ORS § 40.135(1), there is no reasonable basis to suggest that evidence was willfully suppressed and thus the rule need not have been addressed by the bankruptcy court.

### 4.   The Bankruptcy Court Did Not Err In Applying Judicial Estoppel As Proof Of A Portion Of The House Account Balance

Ron Troutman, in connection with his divorce proceedings, submitted documentation indicating that the balance on the house account was $84,450 and the divorce court relied on this assertion in distributing the marital property.   During the bankruptcy proceedings, however, Ron Troutman took a position inconsistent with the position he asserted in the divorce proceedings.   Ron Troutman now contends that there were inaccuracies in the outstanding balance as of the 1997 divorce proceedings.

Judicial estoppel is an equitable doctrine that precludes a

8 - ORDER

party from gaining an advantage by asserting one position, and then
later seeking an advantage by taking a clearly inconsistent
position.  Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d
597, 600-01 (9th Cir. 1996).  Courts may consider three factors in
applying judicial estoppel:

> [S]everal factors typically inform the decision whether
> to apply the doctrine in a particular case: First, a
> party's later position must be "clearly inconsistent"
> with its earlier position.... Second, courts regularly
> inquire whether the party has succeeded in persuading a
> court to accept that party's earlier position, so that
> judicial acceptance of an inconsistent position in a
> later proceeding would create "the perception that either
> the first or the second court was misled[.] Absent
> success in a prior proceeding, a party's later
> inconsistent position introduces no "risk of inconsistent
> court determinations," ... and thus no threat to judicial
> integrity.... A third consideration is whether the party
> seeking to assert an inconsistent position would derive
> an unfair advantage or impose an unfair detriment on the
> opposing party if not estopped....  In enumerating these
> factors, we do not establish inflexible prerequisites or
> an exhaustive formula for determining the applicability
> of judicial estoppel.  Additional considerations may
> inform the doctrine's application in specific factual
> contexts.

Hamilton v. State Farm Fire and Cas. Co., 270 F.3d 778, 782-83 (9th
Cir. 2001) (citations omitted).

The bankruptcy court did not abuse its discretion in applying
judicial estoppel.  By asserting debts in the divorce proceeding,
Ron Troutman sought to obtain an advantage as to the value of the
marital estate.  In these proceedings, it is in his interest to now
reduce that debt as much as possible.  To allow Ron Troutman to
take such a position would allow him to disregard the integrity of

9 - ORDER

the judicial process as his own testimony demonstrates with regard to the divorce proceeding in which he states, "I didn't care" if the number submitted was correct. <u>See</u> Excerpt of Record (#146 in 03-6417-aer) at p. 365.


B.   The $150,000 Loan

Ron Troutman argues that the bankruptcy court erred in: (1) finding the second amended complaint or the deposition of Dallas Troutman put him on notice of the assignment theory of recovery; (2) in failing to allow Ron Troutman to assert counterclaims and defenses; and (3) in finding the $150,000 loan was an amount due and payable to the debtor.


1.   The Bankruptcy Court Did not Err In Allowing The Creditor's Committee To Assert An Assignment Theory Or in Denying The Request To Amend

As noted above, a complaint need only contain a short and plain statement of the claim showing an entitlement to relief. It is not necessary that plaintiff state sufficient facts to constitute a cause of action, but plaintiff must at least set forth enough details so as to provide defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery.

The second amended complaint plead two causes of action

10 - ORDER

entitled money lent and turnover.  The complaint alleged that the outstanding balanced owed the debtor included $150,000 advanced to Ron Troutman in June of 1998.  During Dallas Troutman's deposition, it was discovered that the $150,000 was a result Dallas Troutman lending the money to Ron Troutman by taking out the loan and then causing the debtor to pay off the loan.  Dallas Troutman also indicated that the debtor would receive the stock Ron Troutman purchased from his ex-wife following the divorce in return for paying off the loan.  As noted above, that stock transfer did not occur.

The deposition clarified the issue with respect to the $150,000 loan and the pretrial order reflected that clarification by noting that the debtor was the assignee of Dallas Troutman's right to payment from Ron Troutman of the $150,000 loan.  This is the proper role of the pretrial order and no error was committed in permitting the case to proceed under such theory.  Moreover, Ron Troutman and his counsel were present at Dallas Troutman's deposition and had the opportunity to explore the assignment of the $150,000 receivable.  Ron Troutman had ample notice of the theory and was certainly aware through the second amended complaint that the creditor's Committee sought to recover the $150,000 amount lent.  Additionally, Ron Troutman testified that he thought his obligation to repay the loan was to be satisfied through a buy-back of the stock by the debtor.  The bankruptcy court did not err in

11 - ORDER

permitting the assignment theory to go forward. The second amended complaint itself provided enough information to put Ron Troutman on notice of the basis of the claim and such pleading led to the clarification in discovery.

Despite the clarification resulting from Dallas Troutman's deposition, Ron Troutman did not seek to amend his answer until the eve of trial to add counterclaims and defenses to the assignment. The bankruptcy court did not abuse its discretion in denying the oral request. Leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). Whether leave to amend should be granted is generally determined by considering the following factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party. In Re Rogstad, 126 F.3d 1224, 1228 (9th Cir. 1997).

Ron Troutman's assertion that he was unaware of the assignment issue until the pretrial order is belied by the notice provided in the second amended complaint that $150,000 was owed to debtor and the fact that discovery revealed how the loan came to be paid by the debtor in Dallas Troutman's deposition of November 19, 2004. Certainly a motion to amend would have been allowed following Dallas Troutman's deposition, but Ron Troutman did not even seek to amend after receiving the pretrial order on June 5, 2006. Two weeks later, Ron Troutman moved in limine to prevent the assignment theory, but did not seek to amend his answer at that time. The

12 - ORDER

court heard the motion in limine on August 22, 2006, and when the
motion was denied, only then did Ron Troutman formally move to
amend despite the fact that the trial was scheduled for October 31,
2006.[2]  Counsel even cited Dallas Troutman's deposition testimony
as providing a basis for the defenses, or to bring in Dallas
Troutman as a third party defendant or to assert a breach of
contract based on the debtor's failure to buy back the stock which
was now worthless.  The bankruptcy court properly denied the motion
to amend based on the undue delay.  Moreover, the proposed
counterclaims and defenses were weak at best and reopening
discovery at such a late juncture would have been too prejudicial
to the Creditor's Committee.


     2.   The Bankruptcy Court Did Not Err In Finding That The
$150,000 Loan Was An Amount Due And Payable

     An assignment may be oral or written and no special form is
necessary provided that the transfer is clearly intended as a
present assignment of the interest held by assignor.  Matter of
Vaughn's Estate, 38 Or. App. 29, 32 (1979).  An assignee occupies
the same legal position under a contract as does an original
contracting party.  Humbert Excavating, Inc. v. City of Pendleton,
118 Or. App. 137, 141, adhered to as modified on other grounds 120

---

     [2]Ron Troutman did object to the assignment theory in the
pretrial order itself and contended that if allowed, it should be
allowed to assert further defenses.

     13 - ORDER

Or. App. 431 (1993).

The court properly found that the evidence established that Dallas Troutman intended to assign his interest in the loan to the debtor. Dallas Troutman instructed the debtor's account manager to pay off the loan to South Umpqua bank and told her that Ron Troutman would pay the debtor back. See Excerpt of Record (attached to #146 in 03-6417-aer) at p. 296. Dallas Troutman also told the accounting manager to put the resulting receivable in the general receivables account for shareholders and she labeled the account as owing by Ron Troutman. Dallas Troutman stated that the debtor would buy the stock from Ron Troutman valued at $150,000 to satisfy the loan, but that he did not recall the transfer of stock occurring. See Excerpt of Record at pp. 718-26. No evidence demonstrated that Ron Troutman ever satisfied the $150,00 receivable, but the evidence did establish that it was still on the debtor's books as due and owing.

Moreover, Ron Troutman's assertion that the debtor was obligated to buy the stock and failed to do so, thus relieving him of the obligation to satisfy the receivable, is controverted by the evidence Ron Troutman did not surrender the stock even if he had properly asserted such defense.[3] Accordingly, the bankruptcy court

---

[3]Additionally, Dallas Troutman stated that he did not direct anyone to cause the transfer to occur and there is no indication that debtor was responsible for taking the stock from Ron Troutman as opposed to Ron Troutman surrendering the stock.

14 - ORDER

did not err in finding that the $150,000 was an amount due and payable by Ron Troutman.


## **CONCLUSION**

For the reasons stated above, the bankruptcy court's decision is affirmed.

DATED this ___6th___ day of March, 2008.

____s/ Michael R. Hogan_____
United States District Judge

15 - ORDER